UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
J.P.E, An Infant by his Parent and Natural Guardian,
DANIELLE R. PEREZ-ESTRADA, DANIELLE R.
PEREZ-ESTRADA, Individually, and JOEL
PEREZ-ESTRADA,

|  |  |  |
|---|---|---|
| | **Plaintiffs,** | **COMPLAINT** |
| -v- | | |

UNITED STATES OF AMERICA,

                                             **Defendant,**
-------------------------------------------------------------------X

       J.P.E., an infant under the age of eighteen (18) years ("J.P.E."), by his Parent and Natural Guardian, DANIELLE R. PEREZ-ESTRADA, DANIELLE R. PEREZ-ESTRADA, Individually, and JOEL PEREZ-ESTRADA, though their attorneys, MEAGHER & MEAGHER, P.C., as and for their Complaint, allege the following, upon information and belief:

## INTRODUCTION

      1.        This is an action against the Defendant UNITED STATES OF AMERICA under the Federal Tort Claims Act, (28 U.S.C. § 2671, *et seq.*), 28 U.S.C. § 1346(b)(1) and 28 U.S.C. 1367(a), for negligence and medical malpractice in connection with the medical care provided to the Plaintiffs, DANIELLE R. PEREZ-ESTRADA and Infant Plaintiff, J.P.E., by SHARON L. PATRICK, M.D., KFIER KUBA, M.D., JILL BERKIN, M.D., BRENDA PANZERA, M.D., JUDITH E. LEVY, M.D., RASHA S. KHOURY, M.D., JORDAN J. HIRSCH, M.D., PETER S. BERNSTEIN, M.D., JENNY DIEP, M.D., MARY HARDY, M.D., RONALD D. DUDEK, M.D., MEGAN EARLY, M.D., JIMMY BELOTTE, M.D., and NATALIE DAVIS, M.D., whom are employees and/or acting on behalf of the UNITED STATES OF AMERICA, and

MONTEFIORE MEDICAL CENTER (hereinafter referred to as "MONTEFIORE"), as an agent facility of the UNITED STATES OF AMERICA.

2.      This is also an action brought against MONTEFIORE, as an agent of the UNITED STATES OF AMERICA, for negligence and medical malpractice in connection with the medical care they provided to the Plaintiffs.

3.      The claims herein against the Defendant, UNITED STATES OF AMERICA, are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, 28 U.S.C. § 1346(b)(1) and 28 U.S.C. 1367(a), for money damages as compensation for personal injuries caused by the Defendant's negligence and medical malpractice.

4.      Plaintiffs, J.P.E., an Infant by his Parent and Natural Guardian, DANIELLE R. PEREZ-ESTRADA, and DANIELLE R. PEREZ-ESTRADA, Individually, have fully complied with the provision of the Federal Tort Claims Act, with Service of an Administrative Claim on June 4, 2020. See Exhibit 1 - Standard Form 95 served by the Plaintiffs.

## SUBJECT MATTER JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1346(b) and 1367(a).

6.      Venue is proper pursuant to 28 U.S.C. 1391(e) in that this is an action against the United States of America and agents thereof are located in the County of the Bronx and the acts and omissions alleged occurred within the Southern District of New York and Plaintiff resides in Bronx, New York.

## THE PARTIES

7.      J.P.E. is an infant under the age of eighteen (18) residing with his mother and natural guardian, Plaintiff, DANIELLE R. PEREZ-ESTRADA.

8.      DANIELLE R. PEREZ-ESTRADA is an adult over the age of eighteen (18) and is the Parent and Natural Guardian of the Infant-Plaintiff, J.P.E.

9.      Plaintiffs, J.P.E., DANIELE R. PEREZ-ESTRADA, and JOEL PEREZ-ESTRADA, reside at 1189 Van Nest Avenue, Bronx, New York 10461.

10.     At all times hereinafter mentioned, Defendant, UNITED STATES OF AMERICA, owned, operated, supervised, maintained, funded, and/or controlled certain programs and/or clinics and/or premises, located within MONTEFIORE MEDICAL CENTER (hereinafter referred to as "MONTEFIORE").

11.     At all times hereinafter mentioned, MONTEFIORE, was a duly constituted department and entity of the UNITED STATES OF AMERICA.

12.     At all times MONTEFIORE had a principal place of business located at 111 East 210th Street, Bronx, New York 10467.

13.     At all times hereinafter mentioned, MONTEFIORE, owned, operated, and controlled the facility located at 1695 Eastchester Road, Bronx, New York 10461.

14.     At all times hereinafter mentioned, MONTEFIORE, owned, operated, and controlled the facility located at 1825 Eastchester Road, Bronx, New York 10461.

15.     At all times hereinafter mentioned, MONTEFIORE, was and is still a medical facility for the care and treatment of patients in the State of New York, County of Bronx.

16.     At all times hereinafter mentioned, MONTEFIORE, was a general hospital, duly organized and existing under and by virtue of the laws of the State of New York.

17.     At all times hereinafter mentioned, MONTEFIORE, was a general hospital licensed to do business and doing business in the State of New York.

3

18.     At all times hereinafter mentioned, MONTEFIORE, was a voluntary hospital existing under and by virtue of the laws of the State of New York.

19.     At all times hereinafter mentioned, MONTEFIORE, was a voluntary hospital licensed to do business and doing business in the State of New York.

20.     At all times hereinafter mentioned, the Defendant, MONTEFIORE, was a domestic not-for-profit corporation, duly organized and existing under and by virtue of the laws of the State of New York.

21.     At all times hereinafter mentioned, the Defendant, MONTEFIORE, was a domestic not-for-profit corporation licensed to do business and doing business in the State of New York.

22.     At all times hereinafter mentioned, SHARON L. PATRICK, M.D. (hereinafter referred to as "PATRICK") was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

23.     At all times hereinafter mentioned, PATRICK, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician/maternal fetal medicine specialist capable of practicing medicine and/or obstetrics and maternal fetal medicine within the State of New York.

24.     At all times hereinafter mentioned, PATRICK was a servant of the UNITED STATES OF AMERICA.

25.     At all times hereinafter mentioned, PATRICK was an agent of the UNITED STATES OF AMERICA.

4

26.     At all times hereinafter mentioned, PATRICK was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

27.     At all times hereinafter mentioned, PATRICK and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of PATRICK.

28.     At all times hereinafter mentioned, PATRICK, was an employee of the MONTEFIORE.

29.     At all times hereinafter mentioned, PATRICK, was acting within the scope of her employment as an employee of MONTEFIORE.

30.     At all times hereinafter mentioned, PATRICK, was an independent contractor of MONTEFIORE.

31.     At all times hereinafter mentioned, KFIER KUBA, M.D., hereinafter referred to as "KUBA," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

32.     At all times hereinafter mentioned, KUBA, held himself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

33.     At all times hereinafter mentioned, KUBA was a servant of the UNITED STATES OF AMERICA.

34.     At all times hereinafter mentioned, KUBA was an agent of the UNITED STATES OF AMERICA.

35.     At all times hereinafter mentioned, KUBA was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

36.     At all times hereinafter mentioned, KUBA and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of KUBA.

37.     At all times hereinafter mentioned, KUBA was an employee of MONTEFIORE.

38.     At all times hereinafter mentioned, KUBA was acting within the scope of her employment as an employee of MONTEFIORE.

39.     At all times hereinafter mentioned, KUBA was an independent contractor of MONTEFIORE.

40.     At all times hereinafter mentioned, JILL BERKIN, M.D., hereinafter referred to as "BERKIN," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

41.     At all times hereinafter mentioned, BERKIN, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

42.     At all times hereinafter mentioned, BERKIN was a servant of the UNITED STATES OF AMERICA.

43.     At all times hereinafter mentioned, BERKIN was an agent of the UNITED STATES OF AMERICA.

44.	At all times hereinafter mentioned, BERKIN was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

45.	At all times hereinafter mentioned, BERKIN and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of BERKIN.

46.	At all times hereinafter mentioned, BERKIN was an employee of MONTEFIORE.

47.	At all times hereinafter mentioned, BERKIN was acting within the scope of her employment as an employee of MONTEFIORE.

48.	At all times hereinafter mentioned, BERKIN, was an independent contractor of MONTEFIORE.

49.	At all times hereinafter mentioned, BRENDA PANZERA, M.D., hereinafter referred to as "PANZERA," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

50.	At all times hereinafter mentioned, PANZERA, held herself out to the general public as a duly qualified and/or licensed physician and/or hematologist capable of practicing medicine and/or hematology within the State of New York.

51.	At all times hereinafter mentioned, PANZERA was a servant of the UNITED STATES OF AMERICA.

52.	At all times hereinafter mentioned, PANZERA was an agent of the UNITED STATES OF AMERICA.

53.     At all times hereinafter mentioned, PANZERA was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

54.     At all times hereinafter mentioned, PANZERA and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of PANZERA.

55.     At all times hereinafter mentioned, PANZERA was an employee of MONTEFIORE.

56.     At all times hereinafter mentioned, PANZERA was acting within the scope of her employment as an employee of MONTEFIORE.

57.     At all times hereinafter mentioned, PANZERA was an independent contractor of MONTEFIORE.

58.     At all times hereinafter mentioned, JUDITH E. LEVY, M.D., hereinafter referred to as "LEVY," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

59.     At all times hereinafter mentioned, LEVY, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

60.     At all times hereinafter mentioned, LEVY was a servant of the UNITED STATES OF AMERICA.

61.     At all times hereinafter mentioned, LEVY was an agent of the UNITED STATES OF AMERICA.

62.     At all times hereinafter mentioned, LEVY was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

63.     At all times hereinafter mentioned, LEVY and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of LEVY.

64.     At all times hereinafter mentioned, LEVY was an employee of MONTEFIORE.

65.     At all times hereinafter mentioned, LEVY was acting within the scope of her employment as an employee of MONTEFIORE.

66.     At all times hereinafter mentioned, LEVY was an independent contractor of MONTEFIORE.

67.     At all times hereinafter mentioned, RASHA S. KHOURY, M.D., hereinafter referred to as "KHOURY," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

68.     At all times hereinafter mentioned, KHOURY, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

69.     At all times hereinafter mentioned, KHOURY was a servant of the UNITED STATES OF AMERICA.

70.     At all times hereinafter mentioned, KHOURY was an agent of the UNITED STATES OF AMERICA.

71.     At all times hereinafter mentioned, KHOURY was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

72.     At all times hereinafter mentioned, KHOURY and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of KHOURY.

73.     At all times hereinafter mentioned, KHOURY was an employee of MONTEFIORE.

74.     At all times hereinafter mentioned, KHOURY, was acting within the scope of her employment as an employee of MONTEFIORE.

75.     At all times hereinafter mentioned, KHOURY, was an independent contractor of MONTEFIORE.

76.     At all times hereinafter mentioned, JORDAN J. HIRSCH, M.D., hereinafter referred to as "HIRSCH," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

77.     At all times hereinafter mentioned, HIRSCH, held himself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

78.     At all times hereinafter mentioned, HIRSCH was a servant of the UNITED STATES OF AMERICA.

79.     At all times hereinafter mentioned, HIRSCH was an agent of the UNITED STATES OF AMERICA.

80.     At all times hereinafter mentioned, HIRSCH was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

81.     At all times hereinafter mentioned, HIRSCH and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of HIRSCH.

82.     At all times hereinafter mentioned, HIRSCH was an employee of MONTEFIORE.

83.     At all times hereinafter mentioned, HIRSCH was acting within the scope of her employment as an employee of MONTEFIORE.

84.     At all times hereinafter mentioned, HIRSCH, was an independent contractor of MONTEFIORE.

85.     At all times hereinafter mentioned, PETER S. BERNSTEIN, M.D., hereinafter referred to as "BERNSTEIN," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

86.     At all times hereinafter mentioned, BERNSTEIN, held himself out to the general public as a duly qualified and/or licensed physician and/or obstetrician/maternal fetal medicine specialist capable of practicing medicine and/or obstetrics and maternal fetal medicine within the State of New York.

87.     At all times hereinafter mentioned, BERNSTEIN was a servant of the UNITED STATES OF AMERICA.

88.     At all times hereinafter mentioned, BERNSTEIN was an agent of the UNITED STATES OF AMERICA.

89.     At all times hereinafter mentioned, BERNSTEIN was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

90.     At all times hereinafter mentioned, BERNSTEIN and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of BERNSTEIN.

91.     At all times hereinafter mentioned, BERNSTEIN was an employee of the Defendant, MONTEFIORE.

92.     At all times hereinafter mentioned, BERNSTEIN was acting within the scope of her employment as an employee of MONTEFIORE.

93.     At all times hereinafter mentioned, BERNSTEIN was an independent contractor of MONTEFIORE.

94.     At all times hereinafter mentioned, JENNY DIEP, M.D., hereinafter referred to as "DIEP," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

95.     At all times hereinafter mentioned, DIEP, held herself out to the general public as a duly qualified and/or licensed physician and/or rheumatology specialist capable of practicing medicine and/or rheumatology within the State of New York.

96.     At all times hereinafter mentioned, DIEP was a servant of the UNITED STATES OF AMERICA.

97.     At all times hereinafter mentioned, DIEP was an agent of the UNITED STATES OF AMERICA.

98.     At all times hereinafter mentioned, DIEP was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

99.     At all times hereinafter mentioned, DIEP and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of DIEP.

100.    At all times hereinafter mentioned, DIEP was an employee of MONTEFIORE.

101.    ′ At all times hereinafter mentioned, DIEP was acting within the scope of her employment as an employee of MONTEFIORE.

102.    At all times hereinafter mentioned, DIEP was an independent contractor of MONTEFIORE.

103.    At all times hereinafter mentioned, MARY HARDY, M.D., hereinafter referred to as "HARDY," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

104.    At all times hereinafter mentioned, HARDY, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

105.    At all times hereinafter mentioned, HARDY was a servant of the UNITED STATES OF AMERICA.

106.    At all times hereinafter mentioned, HARDY was an agent of the UNITED STATES OF AMERICA.

107.     At all times hereinafter mentioned, HARDY was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

108.     At all times hereinafter mentioned, HARDY and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of HARDY.

109.     At all times hereinafter mentioned, HARDY was an employee of MONTEFIORE.

110.     At all times hereinafter mentioned, HARDY, was acting within the scope of her employment as an employee of MONTEFIORE.

111.     At all times hereinafter mentioned, HARDY was an independent contractor of MONTEFIORE.

112.     At all times hereinafter mentioned, RONALD D. DUDEK, M.D., hereinafter referred to as "DUDEK," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

113.     At all times hereinafter mentioned, DUDEK, held himself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

114.     At all times hereinafter mentioned, DUDEK was a servant of the UNITED STATES OF AMERICA.

115.     At all times hereinafter mentioned, DUDEK was an agent of the UNITED STATES OF AMERICA.

116.    At all times hereinafter mentioned, DUDEK was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

117.    At all times hereinafter mentioned, DUDEK and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of DUDEK.

118.    At all times hereinafter mentioned, DUDEK was an employee of MONTEFIORE.

119.    At all times hereinafter mentioned, DUDEK was acting within the scope of her employment as an employee of MONTEFIORE.

120.    At all times hereinafter mentioned, DUDEK was an independent contractor of MONTEFIORE.

121.    At all times hereinafter mentioned, MEGAN EARLY, M.D., hereinafter referred to as "EARLY," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

122.    At all times hereinafter mentioned, EARLY, held herself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

123.    At all times hereinafter mentioned, EARLY was a servant of the UNITED STATES OF AMERICA.

124.    At all times hereinafter mentioned, EARLY was an agent of the UNITED STATES OF AMERICA.

125.     At all times hereinafter mentioned, EARLY was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

126.     At all times hereinafter mentioned, EARLY and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of EARLY.

127.     At all times hereinafter mentioned, EARLY was an employee of MONTEFIORE.

128.     At all times hereinafter mentioned, EARLY was acting within the scope of her employment as an employee of MONTEFIORE.

129.     At all times hereinafter mentioned, EARLY, was an independent contractor of MONTEFIORE.

130.     At all times hereinafter mentioned, JIMMY BELOTTE, M.D., hereinafter referred to as "BELOTTE," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

131.     At all times hereinafter mentioned, BELOTTE, held himself out to the general public as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

132.     At all times hereinafter mentioned, BELOTTE was a servant of the UNITED STATES OF AMERICA.

133.     At all times hereinafter mentioned, BELOTTE was an agent of the UNITED STATES OF AMERICA.

134.     At all times hereinafter mentioned, BELOTTE was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

135.     At all times hereinafter mentioned, BELOTTE and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of BELOTTE.

136.     At all times hereinafter mentioned, BELOTTE was an employee of MONTEFIORE.

137.     At all times hereinafter mentioned, BELOTTE was acting within the scope of his employment as an employee of MONTEFIORE.

138.     At all times hereinafter mentioned, BELOTTE was an independent contractor of MONTEFIORE.

139.     At all times hereinafter mentioned, NATALIE DAVIS, M.D., hereinafter referred to as "DAVIS," was a Federal employee licensed to practice medicine and maintained offices for the practice of medicine and/or did engage in the practice of medicine within the State of New York.

140.     At all times hereinafter mentioned, DAVIS held herself out to the general public herein, as a duly qualified and/or licensed physician and/or obstetrician capable of practicing medicine and/or obstetrics within the State of New York.

141.     At all times hereinafter mentioned, DAVIS was a servant of the UNITED STATES OF AMERICA.

142.     At all times hereinafter mentioned, DAVIS was an agent of the UNITED STATES OF AMERICA.

143.     At all times hereinafter mentioned, DAVIS was an independent contractor under the supervision, direction, and/or control of the UNITED STATES OF AMERICA.

144.     At all times hereinafter mentioned, DAVIS and the Defendant, UNITED STATES OF AMERICA, stood in such a relationship with each other in the care, treatment, and/or services rendered to the Plaintiffs, so as to make the UNITED STATES OF AMERICA liable for the acts and omissions of DAVIS.

145.     At all times hereinafter mentioned, DAVIS was an employee of MONTEFIORE.

146.     At all times hereinafter mentioned, DAVIS was acting within the scope of her employment as an employee of MONTEFIORE.

147.     At all times hereinafter mentioned, DAVIS was an independent contractor of MONTEFIORE.

148.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of the Defendant, UNITED STATES OF AMERICA.

149.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of MONTEFIORE.

150.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of PATRICK.

151.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of KUBA.

152.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of BERKIN.

153.     During the year 2018, and more specifically from January 2018through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of PANZERA.

154.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of LEVY.

155.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of KHOURY.

156.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of HIRSCH.

157.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of BERNSTEIN.

158.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of DIEP.

159.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of HARDY.

160.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of DUDEK.

161.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of EARLY.

162.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of BELOTTE.

163.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, DANIELLE R. PEREZ-ESTRADA, was a patient of DAVIS.

164.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, J.P.E., was a patient of the Defendant, UNITED STATES OF AMERICA.

165.     During the year 2018, and more specifically from January 2018 through June 2018, Plaintiff, J.P.E. was a patient of MONTEFIORE.

166.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of PATRICK.

167.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of KUBA.

168.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of BERKIN.

169.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of PANZERA.

170.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of LEVY.

171.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of KHOURY.

172.     During the year and 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of HIRSCH.

173.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of BERNSTEIN.

174.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of DIEP.

175.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of HARDY.

176.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of, DUDEK.

177.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of EARLY.

178.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of BELOTTE.

179.     During the year 2018, and more specifically from January 2018 through June 2018, Infant-Plaintiff, J.P.E., was a patient of DAVIS.

180.     During the year 2018, and more specifically from January 2018 through June 2018, the Defendant, UNITED STATES OF AMERICA, provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

181.     During the year 2018, and more specifically from January 2018 through June 2018, MONTEFIORE, provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

182.     During the year 2018, and more specifically from January 2018 through June 2018, PATRICK provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

183.     During the year 2018, and more specifically from January 2018 through June 2018, KUBA, provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

184.     During the year 2018, and more specifically from January 2018 through June 2018, BERKIN provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

185.     During the year 2018, and more specifically from January 2018 through June 2018, PANZERA provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

186.     During the year 2018, and more specifically from January 2018 through June 2018, LEVY provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

187.     During the year 2018, and more specifically from January 2018 through June 2018, KHOURY provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

188.     During the year 2018, and more specifically from January 2018 through June 2018, HIRSCH provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

189.     During the year 2018, and more specifically from January 2018 through June 2018, BERNSTEIN provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

190.     During the year 2018, and more specifically from January 2018 through June 2018, DIEP provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

191.     During the year 2018, and more specifically from January 2018 through June 2018, HARDY provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

192.    During the year 2018, and more specifically from January 2018 through June 2018, DUDEK provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

193.    During the year 2018, and more specifically from January 2018 through June 2018, EARLY provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

194.    During the year 2018, and more specifically from January 2018 through June 2018, BELOTTE provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

195.    During the year 2018, and more specifically from January 2018 through June 2018, DAVIS provided medical care and treatment to Plaintiff, DANIELLE PEREZ-ESTRADA.

196.    During the year 2018, and more specifically from January 2018 through June 2018, the Defendant, UNITED STATES OF AMERICA, provided medical care and treatment to Plaintiff, J.P.E.

197.    During the year 2018, and more specifically from January 2018 through June 2018, MONTEFIORE, provided medical care and treatment to Plaintiff, J.P.E.

198.    During the year 2018, and more specifically from January 2018 through June 2018, PATRICK provided medical care and treatment to Plaintiff, J.P.E.

199.    During the year 2018, and more specifically from January 2018 through June 2018, KUBA, provided medical care and treatment to Plaintiff, J.P.E.

200.    During the year 2018, and more specifically from January 2018 through June 2018, BERKIN provided medical care and treatment to Plaintiff, J.P.E.

201.    During the year 2018, and more specifically from January 2018 through June 2018, PANZERA provided medical care and treatment to Plaintiff, J.P.E.

202.    During the year 2018, and more specifically from January 2018 through June 2018, LEVY provided medical care and treatment to Plaintiff, J.P.E.

203.    During the year 2018, and more specifically from January 2018 through June 2018, KHOURY provided medical care and treatment to Plaintiff, J.P.E.

204.    During the year 2018, and more specifically from January 2018 through June 2018, HIRSCH provided medical care and treatment to Plaintiff, J.P.E.

205.    During the year 2018, and more specifically from January 2018 through June 2018, BERNSTEIN provided medical care and treatment to Plaintiff, J.P.E.

206.    During the year 2018, and more specifically from January 2018 through June 2018, DIEP provided medical care and treatment to Plaintiff, J.P.E.

207.    During the year 2018, and more specifically from January 2018 through June 2018, HARDY provided medical care and treatment to Plaintiff, J.P.E.

208.    During the year 2018, and more specifically from January 2018 through June 2018, DUDEK provided medical care and treatment to Plaintiff, J.P.E.

209.    During the year 2018, and more specifically from January 2018 through June 2018, EARLY provided medical care and treatment to Plaintiff, J.P.E.

210.    During the year 2018, and more specifically from January 2018 through June 2018, BELOTTE provided medical care and treatment to Plaintiff, J.P.E.

211.    During the year 2018, and more specifically from January 2018 through June 2018, DAVIS provided medical care and treatment to Plaintiff, J.P.E.

### FEDERAL TORT CLAIMS ACT (FTCA) ADMINISTRATIVE PROCEDURE

212.     On June 4, 2020, Plaintiffs' presented their claims to the appropriate Federal Agency for administrative settlement under the FTCA pursuant to 28 U.S.C. § 2671, et, seq. (See Exhibit 1).

213.     As of the filing of this Complaint, no denial has been issued on this claim and more than six months have elapsed since the presentment of the claims.

214.     Pursuant to 28 U.S.C. 2401(b) the within Summons and Complaint is timely.

### AS AND FOR A FIRST CAUSE OF ACTION FOR PERSONAL INJURIES

215.     Plaintiffs repeat, reiterates and realleges each and every allegation contained in paragraphs "1" through "214 inclusive with the same force and effect as if more fully set forth herein.

216.     Defendant, its agents, servants and/or employees undertook to treat and provide medical care to the Plaintiffs during the pregnancy, labor, and delivery of Infant-Plaintiff, J.P.E. at various locations.

217.     Defendant, its agents, servants and/or employees, including but not limited to those aforementioned, were negligent and/or careless in their treatment of the Plaintiffs from January 2018 through June 2018, by negligently and carelessly: failing to properly monitor the Plaintiffs during the pre-natal period, failing to timely perform physical examinations; failing to appreciate the circumstances then and there presenting; failing to perform necessary and appropriate examinations; failing to take a complete history from the Plaintiff at her pre-natal presentations; failing to follow up on medical issues that the Plaintiff reported; failing to perform timely and necessary vaginal exams and repeat them at appropriate intervals; failing to make necessary treatment recommendations; failing to recommend an earlier delivery; failing to understand the

significance of the results of the ultrasounds and make appropriate treatment recommendations; allowing the Plaintiff to labor for too long; failing to appreciate the signs and fetal distress in a timely manner; failing to timely perform a cesarean section; failing to recognize the signs of a failed induction of labor; failing to timely conclude that there was a failed induction of labor and therefore deliver the baby via cesarean section; failing to properly assess the fetal heart tracings; failing to properly interpret EFM tracings; failing to understand the significance of the findings on the fetal heart tracings; failing to appreciate the failed induction of labor; failing to employ a differential diagnosis for the signs and symptoms then and there existing; failing to discuss options with the Plaintiff; depriving the Plaintiffs of the opportunity to deliver via cesarean section; in failing to recognize the need for a vaginal examination; in failing to do what was best for the mother and fetus; failing to allow the Plaintiffs to make decisions as to the method of delivery; failing to listen to the Plaintiffs as to the method of delivery; failing to appreciate the risk that Plaintiffs would sustain a sulcal injury, second degree laceration and post-partum hemorrhage and make treatment recommendations to avoid or minimize said injuries; in failing to appreciate the risk to the fetus of continued labor; failing to appreciate the risk to the fetus of continued induction of labor; failing to take appropriate steps to protect the fetus from injury; failing to appreciate the medical history and make appropriate treatment recommendations; failing to understand the medical history and plan for necessary treatment; failing to timely recognize the potential for injury to the Plaintiffs' and make timely treatment recommendations; failing to minimize the risk to the fetus; failing to act in a manner that would reduce the risk of injury to the fetus; in allowing the Plaintiffs' condition to worsen; failing to understand the significance of the condition and complaints and take timely corrective measures; allowing the Plaintiff to go on to vaginally deliver the fetus after a prolonged labor; failing to advise the Plaintiff of the risks of

failing to take proactive measures; failing to offer the Plaintiff options to address her ongoing complaints; mismanaging the pre-natal care so as to cause injury to the fetus; mismanaging the pre-natal care so as to cause irreparable harm to Plaintiffs; failing to appropriate make a plan so as to avoid injury to the fetus; failing to appreciate the significant risk to the fetus from the polyhydramnios; failing to treat the preeclampsia; failing to understand the severity of the preeclampsia and make appropriate and necessary treatment recommendations; failing to recognize the signs and symptoms of preeclampsia; failing to plan for a cesarean section; failing to understand the signs and symptoms of the injury so as to make timely treatment recommendations; failing to timely refer the Plaintiffs for surgical intervention; failing to timely refer the Plaintiff for appropriate diagnostic studies to determine the true extent of her complaints and medical condition and repeat same at appropriate intervals; failing to appreciate the risks associated with improper and inadequate clinical monitoring; failing to appreciate the risks associated with improper and inadequate examinations; failing to appreciate the symptoms and complaints of the Plaintiffs; failing to properly, adequately and timely examine the Plaintiffs; failing to properly, adequately and timely monitor the Plaintiffs; failing to administer the best medical judgment; failing to treat the significant and recurrent spikes in blood pressure during the labor; failing to recognize the impact of the uncontrolled blood pressure during the labor on the fetus and take appropriate corrective measures; allowing the labor to continue despite significant spikes in blood pressure; allowing the labor to continue despite recurrent concerning Category II fetal heart recordings; allowing the labor to continue despite recurrent absent variability; allowing the labor to continue despite recurrent variable decelerations; allowing the labor to continue despite concerning fetal heart tracings; failing to adequately and/or appropriately supervise employees; failing to timely diagnose Plaintiff's conditions; failing to exercise due and reasonable

care under the circumstances; failing to exercise due and reasonable care under the circumstances, as to avoid injury to the Plaintiffs; failing to exercise reasonable prudence in the course of evaluating and diagnosing Plaintiff's condition; failing to "do no harm" to the Plaintiffs; failing to timely advise Plaintiffs of the risks of not performing a cesarean section; failing to timely inform Plaintiffs of the urgent need to perform a cesarean section; failing to properly communicate Plaintiff's desire to have a cesarean section to appropriate staff and Doctors involved in Plaintiff's treatment; failing to use proper care, precaution, and skill in obstetrical care of Plaintiffs; failing to timely consult with specialists; failing to timely consult with a neonatologist; failing to timely consult with a maternal-fetal medicine specialist; mis-interpreting, mis-reading and disregarding Plaintiff's ultrasounds and sonograms; in negligently and carelessly failing to obtain Plaintiff's informed consent regarding her labor and delivery care; failing to inform Plaintiffs of the risks involved with a high risk pregnancy; failing to appreciate and identify significant abnormalities and take appropriate and necessary steps to address them; failing to appreciate the results of the diagnostic testing Plaintiffs had prior to the induction of labor; failing to notify Plaintiff of the results of the abnormalities then and there existing; failing to advise the Plaintiff of the significance of the results of the pre-natal testing so as to prevent her from making an informed decision as it related to her delivery; failing to establish a differential diagnosis when treating Plaintiffs; failing to timely communicate and coordinate the prenatal care with the various specialists who were caring for and providing treatment to the Plaintiff; failing to investigate and treat Plaintiff's complaints, inter alia, dizziness, abdominal pain and back pain; failing to ask the necessary and appropriate questions knowing that Plaintiff had Systemic Lupus Erythematosus; failing to supervise it's employees so as to ensure that clinic visits were thorough and appropriate; failing to oversee its' employees so as to avoid injuries to the pregnant patient and her fetus;

failing to ensure that there was direct physician contact with the pre-natal patients at each and every pre-natal appointment; failing to ensure that the obstetrical patients were seen by physicians at each pre-natal visit; failing to ensure that the obstetrical patients were examined by a physician; failing to discuss the possibility of fetal insult and offer treatment options to address that risk; failing to disclose to the Plaintiffs all of the facts that a reasonable doctor or health care personnel under similar circumstances would explain to a patient; failing to obtain a proper and informed consent to the course of treatment taken; in doing nothing to address the complaints and signs and symptoms Plaintiffs demonstrated; failing to advise Plaintiffs of the alternatives thereto and the risks and benefits relating to the alternative treatment, and otherwise failed to properly and adequately and fully inform the Plaintiffs; failing to obtain an immediate obstetrical consult upon observing that there was fetal distress; failing to appreciate the significance of the loss of long term variability; failing to appreciate the significance of the loss of accelerations; deviating from hospital protocols concerning the interpretation of fetal monitoring tracings, cesarean sections, high risk pregnancies, treatment of fetal distress and other protocols; failing to administer proper obstetrical, gynecological, surgical and radiological care and treatment to Danielle R. Perez-Estrada throughout her perinatal course; misinterpreting the ultrasounds and sonograms performed prior to the labor; failing to perform proper peri-partum testing; failing to order and/or perform timely and appropriate diagnostic studies including ultrasounds, CT scans, x-rays and sonograms; failing to order/perform ultrasounds during the labor; and in abandoning the Plaintiffs.

218.    Defendant, its agents, servants and/or employees provided care to the Plaintiffs at the facilities owned and operated by the Weiler Division of Montefiore Medical Center, Pre-natal Clinic, High Risk Clinic, the Obstetrics and Gynecology and MFM Departments, located at 1695

Eastchester Road and at 1825 Eastchester Road Bronx, New York 10461, Bronx County, New York.

219.     As a result of the medical care and treatment, or lack thereof, rendered to the Plaintiff, DANIELLE R. PEREZ-ESTRADA, and to the Infant-Plaintiff, J.P.E., by the Defendant, its agents, servants, and/or employees, including but not limited to those identified herein, their departures from accepted standards of medical, obstetrical, hematologic, maternal fetal medicine, nursing, radiologic, hospital and other good practices, the Plaintiff, DANIELLE R. PEREZ-ESTRADA and the Infant-Plaintiff, J.P.E., sustained severe, serious, and permanent personal injuries.

220.     The injuries and damages sustained by the Plaintiffs were caused by the negligence and/or carelessness of the Defendant, its agents, servants, and/or employees, including but not limited to those identified herein, without any negligence on the part of the Plaintiffs contributing thereto.

**AS AND FOR A SECOND CAUSE OF ACTION FOR LACK OF INFORMED CONSENT**

221.     Plaintiffs repeat, reiterates and realleges each and every allegation contained in paragraphs "1" through "220 inclusive with the same force and effect as if more fully set forth herein.

222.     Defendant, its agents, servant, and/or employees as identified herein, performed some, and failed to perform some, medical treatments, procedures, surgeries, and diagnostic procedures upon Plaintiffs without obtaining the informed consent of the Plaintiffs.

223.     Defendant, its agents, servant, and/or employees as identified herein, failed to advise the Plaintiffs of the risks, dangers, and consequences associated with the performance of,

and/or the nonperformance of, the aforesaid medical treatments, procedures, surgeries and/or diagnostic procedures.

224.     A reasonably prudent person in the Plaintiffs' position would not have permitted, allowed, or undergone the medical treatments, procedures, surgeries, and/or diagnostic procedures that the Defendant, its agents, servants, and/or employees performed on Plaintiffs, and would have chosen a different course of treatment if they had been fully informed of the risks, dangers, and consequences associated therewith.

225.     As a result of the aforesaid medical treatments, procedures, surgeries, and/or diagnostic procedures being withheld and/or performed upon Plaintiffs, without their informed consent, Plaintiffs were damages and caused to sustain severe, serious, and permanent personal injuries.

226.     Such a lack of informed consent is a proximate cause of the Plaintiffs' injuries, for which relief is sought herein.

227.     Plaintiffs sustained severe, serious, and permanent personal injuries as a result of Defendants' failure to obtain informed consent.

228.     The injuries and damages sustained by the Plaintiffs were caused by the negligence of the Defendant, its agents, servants, and/or employees without any negligence on the part of the Plaintiffs contributing thereto.

229.     By reason of the foregoing, FIRST and SECOND CAUSES OF ACTION, Plaintiffs have been damaged in the amount of four million dollars ($4,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION FOR LOSS OF SERVICES

230.     Plaintiffs repeat, reiterates and realleges each and every allegation contained in paragraphs "1" through "229" inclusive with the same force and effect as if more fully set forth herein.

231.     At all times hereinafter mentioned, the Plaintiffs, DANIELLE R. PEREZ-ESTRADA and JOEL PEREZ-ESTRADA, were and are the lawful parents and natural guardians of Infant-Plaintiff, J.P.E., and cohabitates with him as mother, father, and child.

232.     As a result of the foregoing negligence and/or carelessness of the Defendant herein, its agents, servants, and/or employees as identified herein, and the resulting injuries to the Plaintiffs, DANIELLE R. PEREZ-ESTRADA, the Infant-Plaintiff, J.P.E., and JOEL PEREZ-ESTRADA, and without any negligence or culpable conduct on their parts contributing thereto, the Plaintiffs, DANIELLE R. PEREZ-ESTRADA and JOEL PEREZ-ESTRADA, have been deprived of the services, love and affection of their child.

233.     By reason of the forgoing, THIRD CAUSE OF ACTION, Plaintiffs have been damaged in the amount of two million dollars ($2,000,000.00).

## STATEMENT REGARDING EXCEPTIONS IN CPLR ARTICLE 16.

234.     This action falls within one or more exceptions set forth in the Civil Practice Laws and Rules Section 1602.

**WHEREFORE**, Plaintiffs demand judgment against all defendants on all causes of action for:

a)     Damages in the sum of Six Million Dollars ($6,000,000.00) in the FIRST, SECOND, and THIRD CAUSES OF ACTION;

b)     Costs, disbursements, and attorney fees; and

c)      Such other and further relief as this court deems just and proper.


Dated: White Plains, New York
       January 25, 2021

By: Keith J. Clarke, Esq.
MEAGHER & MEAGHER, P.C.
*Attorneys for Plaintiffs*
111 Church Street
White Plains, New York 10601
Office: (914) 328-8844
Fax:    (914) 328-8570
Lawoffice@meagherandmeagherpc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
J.P.E, An Infant by his Parent and Natural Guardian,
DANIELLE R. PEREZ-ESTRADA and DANIELLE R.
PEREZ-ESTRADA, Individually, and JOEL
PEREZ-ESTRADA,

                                    Plaintiffs,                          **CERTIFICATE**
                                                                        **OF MEDICAL**
                    -v-                                                  **MALPRACTICE**

UNITED STATES OF AMERICA,

                                    Defendant,
-----------------------------------------------------------------------X

        KEITH J. CLARKE, ESQ., an attorney duly admitted to practice in the Courts of the

State of New York and the United States District Court for the Southern District of New York

hereby affirms under the penalties of perjury:

        I have reviewed the facts of this case and have consulted with at least one physician who

is licensed to practice in this state, or any other state, and I reasonably believe that said physician

is knowledgeable as to the relevant issues involved in this particular action and I have concluded

on the basis of such review and consultation that there is a reasonable basis for the

commencement of this action.

Dated: White Plains, New York
        January 25, 2021

                                                    _Keith Clarke_
                                                    KEITH J. CLARKE, ESQ.

Case No.:

UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK

J.P.E, An Infant by his Parent and Natural Guardian,
DANIELLE R. PEREZ ESTRADA and DANIELLE R.
PEREZ ESTRADA, Individually,

                                  Plaintiffs,

         -v-

UNITED STATES OF AMERICA,

                                Defendants.

## COMPLAINT

**MEAGHER & MEAGHER, P.C.**
*Attorney for Plaintiff*
111 Church Street
White Plains, New York 10601
(914) 328-8844

Pursuant to FRCP Rule 11, the undersigned, an attorney admitted to practice in the courts of
New York State, certifies that, upon information and belief and reasonable inquiry, the
contentions contained in the annexed documents are not frivolous.

Dated: January 25, 2021          Signature _____

                          Print Signature's Name KEITH J. CLARKE, ESQ.

Service of a copy of the within                 is hereby admitted.
Dated:_____

                              Attorney(s) for